**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **VIC PALAZZO, ET AL** | **CIVIL ACTION** |
| **VERSUS** | **NO. 25-2378 c/w 26-191 and 26-1315** |
| **LOUISIANA DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT, ET AL** | **SECTION "B" (4)**<br>**APPLIES TO: 26-191** |

## ORDER AND REASONS

Before the Court are plaintiffs' Motion to Remand (Rec. Docs. 12), Plenary Infrastructure Belle Chasse, LLC, Plenary Louisiana Tolling, LLC, and Kapsch Trafficcom, USA, Inc.'s ("Contractor Defendants") Opposition (Rec. Doc. 14), Contractor Defendants' Supplemental Memorandum in Opposition (Rec. Doc. 20), and plaintiffs' Supplemental Memorandum in Support of Motion to Remand (Rec. Doc. 22). For the following reasons,

**IT IS ORDERED** that plaintiffs' Motion to Remand (Rec. Doc. 12) be **GRANTED** and the instant matter, *Rousselle v. Louisiana Department of Transportation and Development*, Civil Action No. 26-191 (E.D. La. 2026), be **REMANDED** to the Twenty Fifth Judicial District Court, Parish of Plaquemines, Louisiana.

### I. BACKGROUND

This case, concerning the propriety of tolls and fees incurred by motorists crossing the Belle Chasse Bridge, located in Plaquemines Parish, Louisiana, presents a jurisdictional question: whether this Court should abstain from exercising its jurisdiction pursuant to the Class Action Fairness Act. The Belle Chasse Bridge is the result of a partnership between the Louisiana Department of Transportation ("DOTD") and several private companies, including Plenary Infrastructure Belle Chasse, LLC ("Plenary"), Plenary Louisiana Tolling, LLC, and Kapsch Trafficcom USA (collectively, the "Contractor Defendants"). Pursuant to a Comprehensive

Agreement between DOTD and Plenary, as well as a Tolling Contract between Plenary and Kapsch, Plenary was to be compensated for its investment in the development and construction of the Belle Chasse Bridge with the revenues from toll and fee collection. Rec. Doc. 1-1 at 7. The Contractor Defendants began charging tolls, fees, and other costs on May 14, 2025. *Id.* at 9. By September 14, 2025, the Contractor Defendants had billed, invoiced, and/or charged $5,178,012.67 in tolls and $6,779,337.00 in fees. *Id.*

On December 23, 2025, plaintiffs sued the defendants in state court, requesting a declaratory judgment that the Comprehensive Agreement is null and void as it was not executed in compliance with Louisiana law; seeking a permanent injunction enjoining the defendants from collecting any future tolls; and seeking a return of money that defendants had collected from their tolling regime. Rec. Doc. 1-1 at 10–11. On January 27, 2026, the Contractor Defendants removed the instant action to this Court, asserting jurisdiction pursuant to the CAFA, 28 U.S.C. § 1332(d)(2), as well as the general diversity statute, 28 U.S.C. § 1332(A). Rec. Doc. 1 at 1. In their Notice of Removal, Contractor Defendants assert that they have satisfied CAFA's jurisdictional requirements, including minimal diversity (*i.e.*, at least one proposed class member and one defendant are citizens of different states), numerosity (i.e., a putative class with more than 100 members), and amount in controversy (*i.e.,* an amount exceeding $5 million in the aggregate, exclusive of interest and costs). *Id.* at 6.

On February 26, 2026, plaintiffs filed a motion to remand the instant matter back to state court. Rec. Docs. 12. They argue that remand is appropriate because several exceptions to CAFA jurisdiction apply, including (1) the Local Controversy Exception; (2) the Home State Exception; and (3) the Discretionary Remand Exception. *Id.* Plaintiffs contend that the "primary and overwhelming pertinent conduct" is whether DOTD followed state law when it entered into the

agreement authorizing the collection of tolls, and that DOTD is therefore the "primary [d]efendant" in the above-captioned matter. *Id.* at 5. Contractor Defendants oppose remand, arguing that none of CAFA's exceptions apply. Rec. Doc. 14.

## II. LAW AND ANALYSIS

### A. Removal

A defendant may remove from state court to federal court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). The removing party bears the burden of showing that federal jurisdiction exists and that removal was proper. *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). To determine whether jurisdiction is present for removal, a court must consider the claims in the state court petition as they existed at the time of removal. *Id.* Any ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand. *Id.*

### B. Jurisdiction Under the Class Action Fairness Act

Pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), "[t]he district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs, and is a class action in which—(A) any member of a class of plaintiffs is a citizen of a State different from any defendant[.]" The Fifth Circuit has explained that "CAFA grants the federal courts original jurisdiction to hear interstate class actions where: (1) the proposed class contains more than 100 members; (2) minimal diversity exists between the parties (i.e., at least one plaintiff and one defendant are from different states); (3) the amount in controversy exceeds $5,000,000; and (4) the primary defendants are not states, state officials, or other governmental entities." *Hollinger v. Home State Mut. Ins. Co.*, 654 F.3d 564, 569 (5th Cir. 2011) (citing 28 U.S.C. 1332(d)(2) & (5)(B)). CAFA does not change the traditional rule that the party seeking to remove the case to federal court bears the burden of

establishing federal jurisdiction. However, once jurisdiction has been established preliminarily under CAFA, the objecting party bears the burden of proving by a preponderance of the evidence the applicability of any claimed jurisdictional exceptions. *Opelousas Gen. Gosp. Auth. v. Fairpay Sols., Inc.*, 655 F.3d 358, 360 (5th Cir. 2011).

### C. Analysis

#### i. The Local Controversy and Home State Exceptions

At the outset, the Court finds that the Contractor Defendants have preliminarily established that CAFA grants this Court original jurisdiction over the above-captioned matter: (1) the amount in controversy exceeds $5,000,000; and (2) minimal diversity exists between the parties, *i.e.*, at least one plaintiff is diverse from at least one defendant. 28 U.S.C. § 1332(d)(2). Plaintiffs do not challenge this point. Nevertheless, plaintiffs contend in their Motion to Remand that the Court must abstain from exercising its jurisdiction because of Local Controversy and Home State Exceptions are applicable and prevent the Court from exercising its jurisdiction over this matter. But this contention is wrong.

Federal courts must decline jurisdiction over a proposed class action if either of the "narrow" exceptions is proven by a preponderance of the evidence: (1) the local controversy exception, 28 U.S.C. § 1332(d)(4)(A); or (2) the home state exception, 28 U.S.C. § 1332(d)(4)(B). *Watson v. City of Allen*, 821 F.3d 634, 639 (5th Cir. 2016); *Hollinger*, 654 F.3d at 569–70. Pursuant to the Local Controversy Exception, a district court "shall decline to exercise jurisdiction" over a class action in which (1) greater than two-thirds of the proposed class plaintiff class are citizens of the State in which the action was originally filed; (2) at least one defendant is a defendant from whom significant relief is sought and whose alleged conduct forms a significant basis for the claims asserted by the plaintiff class, and is a citizen of the state in which the action was originally filed; and (3) principal injuries resulting from the alleged conduct or any related conduct of each

defendant were incurred in the state in which the action was originally filed. 28 U.S.C. § 1332(d)(4)(A). Pursuant to the Home State Exception, a district court shall decline to exercise jurisdiction over a class action in which (1) two-thirds or more of the members of all proposed plaintiff classes, and the primary defendants, are citizens of the state in which the action was originally filed. 28 U.S.C. § 1332(d)(4)(B).

Importantly, both exceptions require at least one defendant to be a citizen of the state in which the action was originally filed. This requirement proves fatal for plaintiffs' Motion to Remand, as they cannot establish that any defendant is a Louisiana citizen. The Contractor Defendants, private companies involved with the development and operation of the Belle Chasse Bridge, are not citizens of Louisiana—a fact that is not disputed. DOTD, a political subdivision of the State of Louisiana, is the only remaining defendant. DOTD is not a citizen of Louisiana. As the Fifth Circuit recognizes, "it is long-settled that a state has no citizenship for § 1332(a) diversity purposes…[w]e see no reason to give different meaning to citizenship under § 1332(d)." *Frazier v. Pioneer Americas LLC*, 455 F.3d 542, 547 (5th Cir. 2006) (noting that a Louisiana state agency was not a citizen of Louisiana, which defeated plaintiffs' argument that the Local Controversy Exception precluded jurisdiction); *see also In re Katrina Canal Litig. Breaches*, 524 F.3d 700, 706 (5th Cir. 2008) (recognizing that even under CAFA, "a state is not a citizen" for diversity purposes). Because DOTD is not a citizen of Louisiana, the Court need not abstain from exercising its jurisdiction over this matter because of the Local Controversy or the Home State.

**ii. Discretionary Remand**

Plaintiffs also ask the Court to consider the discretionary remand provision, 28 U.S.C. 1332(d)(3) which provides that "a district court may, in the interest of justice and looking at the totality of the circumstances, decline to exercise jurisdiction…over a class action in which greater

than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate and the primary defendants are citizens of the State in which the action was originally filed[.]" Rec. Doc. 12-2 at 9 (citing 28 U.S.C.S. § 1332(d)(3)). The provision requires the Court to consider several factors which will help it determine whether a class action should be remanded to state court. However, the Court need not consider those factors because of plaintiffs' failure to clear the first hurdle; specifically, plaintiffs have not pointed to a primary defendant who is a citizen of Louisiana. As noted in the Court's discussion about the Local Controversy and Home State Exceptions, DOTD, as a political subdivision of the State of Louisiana, is not a citizen. *Frazier*, 455 F.3d at 547. As such, because plaintiffs have not pointed to any defendant that is a citizen of the State of Louisiana, plaintiffs' request that the above-captioned matter be remanded because of the applicability of the Discretionary Remand provision is **DENIED**.

**iii. Government Entity Exception**

Neither party addressed the Government Entity Exception. That exception prevents the Court from exercising its jurisdiction over any class action in which the primary defendants are states, state officials, or other governmental entities against whom the district court may be foreclosed from ordering relief. 28 U.S.C. § 1332(d)(5)(A); *see also Robert J. Caluda, APLC v. City of New Orleans*, 403 F. Supp. 3d 522, 541 (E.D. La. 2019) (noting that "CAFA does not apply to cases in which the 'primary defendants are States, State officials, or other governmental entities against whom the district court may be foreclosed from ordering relief.'"). Notably, this exception requires that *all* primary defendants be states, state officials, or governmental entities. *Frazier*, 455 F.3d at 546.

The parties, however, dispute whether DOTD is the only primary defendant. The Contractor Defendants cite *Gatti v. Louisiana*, No. CIV.A 10-329-JJB, 2011 WL 1827437 (M.D.

La. Feb. 25, 2011), which explains that courts have cited five factors for assessing whether a party is a primary defendant, including (1) who has the greater liability exposure; (2) who is most able to satisfy a potential judgment; (3) who is sued directly, as opposed to vicariously, or for indemnification or contribution; (4) who is the subject of a significant portion of the claims asserted by the plaintiffs; and (5) who is the only defendant named in one particular cause of action. 2011 WL 1827437, at *6. After reviewing the law, the *Gatti* court went on to explain that "one of the factors to look to in determining who is the primary defendant is the theory of liability posited against the defendants and the claims as they existed at the time of removal." *Id*. The *Gatti* plaintiffs asserted claims against the Louisiana Commissioner of Conservation and several private companies, generally contending that the Commissioner of Conservation violated Louisiana law and improperly granted certain permits. *Id*. at *1. The plaintiffs sought a declaration that the Commissioner's actions were null and void. They also sought damages from the operator defendants. *Id*. The court went on to hold that the state agency's actions were the "crux of the case, the 'but-for cause' of the alleged harm[.]" The court continued that the state was "THE primary defendant because without it, there is no claim that can stand alone at this time and is not dependent upon a finding of what the Commissioner would have or should have done. What the Commissioner would have or should have done is the 'but for' element overriding every issue. All else is secondary." *Id*. at *8.

The Fifth Circuit has also had an opportunity to address the Government Entity Exception's primary defendant requirement. In *Watson v. City of Allen, Tx*., 821 F.3d 634 (5th Cir. 2016), the named plaintiff filed a putative class action challenging the constitutionality of a Texas red light statute and several municipal ordinances enacted pursuant to the state statute. *Watson*, 821 F.3d at 634. The plaintiffs sued the State of Texas, several Texas municipalities, and private companies

which had contracted with the municipal defendants. *Id*. at 637. Despite the presence of the private companies as defendants, the Fifth Circuit explained that "[i]t is the state and the municipalities, however, that had the 'primary role in the alleged' violations of the Texas Constitution." *Id*. at 641. The court continued that the "primary thrust" of the challenge was to "declare unconstitutional the . . . legislative scheme." *Id*. Because the challenged laws were enacted by the state legislature and various municipalities, the court recognized that those government entities "played the primary role." *Id*. Though plaintiffs also asserted claims against the private companies, those claims were "expressly contingent on a threshold finding that the challenged legislative scheme is unconstitutional." *Id*.

Here, plaintiffs state that the "underlying claim is that the Comprehensive Agreement…was entered into in violation of Louisiana law, specifically the failure to comply with LA Revised Statutes 48:250.4 and 48:2084.1, et seq." Rec. Doc. 1-1 at 3. Louisiana Revised Statute 48:250.4 requires DOTD to "comply with the provisions of…48:2084 through 2084.15 that are applicable to public-private partnership projects of the Louisiana Transportation Authority[.]" La. Rev. Stat. 48:250.4. Louisiana Revised Statute 48:2084.15 states that "[i]f any property or facility of the authority or of any private entity authorized to act…is to be located within the jurisdiction of an existing port commission, port, harbor and terminal district, or the offshore terminal authority, the mutual written agreement of such entity shall be required before the authority approves the transportation facility." La. Rev. Stat. 48:2084.15. Plaintiffs explain that, because the Belle Chasse Bridge is within the jurisdiction of the Plaquemines Port, Harbor, and Terminal District ("Port"), DOTD was required to obtain the written agreement of the Port before entering into the agreement with PIBC. Rec. Doc. 1-1 at 5. DOTD allegedly has not obtained the Port's permission. As such, plaintiffs contend, the "Comprehensive Agreement…was not entered into in

compliance with the mandatory provisions of Louisiana law" and that the Comprehensive Agreement is therefore "subject to nullity." *Id.* at 6.

The Court agrees with plaintiffs' contention that the "primary and overwhelming issue" in this case is whether the State of Louisiana failed to adhere to several state statutory provisions, and that claims against the Contractor Defendants are merely ancillary to that threshold legal challenge. Rec. Doc. 12-2 at 1. As in *Gatti* and *Watson*, the thrust of the instant matter is whether the actions of a state agency, DOTD, were violative of state law and therefore whether the Comprehensive Agreement is null and void. Rec. Doc. 1-1 at 10. Because DOTD played the primary role in the violation of state law by allegedly failing to secure the written agreement of the Port, DOTD is the primary defendant in the instant matter. In other words, what "[DOTD] would have or should have done is the 'but for' element overriding every issue. All else is secondary." *Gatti*, 2011 WL 1827437, at *8. While plaintiffs also seek the return of money that the Contractor Defendants have collected, seeking damages from private companies does not, in itself, make the private companies also primary defendants. *Id.* at *2, *8 (finding that the state was the primary defendant despite plaintiffs' request for monetary damages from private companies). As such, the Court holds that DOTD is the *only* primary defendant, and the instant matter must therefore be **REMANDED** pursuant to CAFA's Government Entity Exception, 28 U.S.C. § 1332(d)(5)(A).

New Orleans, Louisiana, this 27th day of August 2026

SENIOR UNITED STATES DISTRICT JUDGE